# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| **JENNIFER CHAMPION,** *Plaintiff*, v. **PHASELINK UTILITY SOLUTIONS, LLC** and **DARYL BENNETT,** *Defendants*. | **Civil Action No. 5:22-cv-00145-JKP** **JURY TRIAL DEMANDED** |

## MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiff Jennifer Champion ("Plaintiff" or "Champion"), moves for the entry of Final Default Judgment for Plaintiff against Defendants PhaseLink Utility Solutions, LLC ("Phaselink") and Daryl Bennet ("Bennet," collectively, "Defendants"), and in support thereof shows the following:

## I.
## EVIDENCE IN SUPPORT OF DEFAULT JUDGMENT

The facts stated herein are more fully set forth in Plaintiff's Original Complaint ("Complaint") (ECF No. 1) and are supported by the following exhibits, which are incorporated herein by reference: (1) declaration of Jennifer Champion in support of damages (Exhibit A), and (2) declaration of Clif Alexander in support of attorneys' fees (Exhibit B).

## II.
## PROCEDURAL FACTS

On February 17, 2022, Plaintiff Jennifer Champion brought this action to recover unpaid wages, overtime compensation, liquidated damages, attorneys' fees, costs, and other damages allowed by law, pursuant to the Fair Labor Standards Act 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and for damages

for Defendants' breach of written employment contract between Plaintiff and Defendants. Alternatively, Plaintiff sought relief for her unpaid wagers pursuant to Texas common law. *See* ECF No. 1.

On March 31, 2022, Defendants PhaseLink Utility Solutions, LLC and Daryl Bennet were personally served. *See* ECF No. 5. Defendants failed to answer or otherwise defend with respect to Plaintiff's Original Complaint.

On May 24, 2022, the Court Ordered Plaintiff to move for entry of default and default judgment within twenty-one (21) days.

On June 3, 2022, Plaintiff filed a Motion for Clerk's Entry of Default Judgment against Defendants and requested that she have fourteen (14) days to file for final default judgment against Defendants. *See* ECF No. 10.

On June 6, 2022, the Clerk of this Court entered a default on the record as to Defendants. *See* ECF No. 11.

On June 14, 2022, Plaintiff moved to extend the deadline to file for entry of final default judgment by seven (7) days thereby making the deadline June 21, 2022. *See* ECF No. 12. The Court subsequently granted Plaintiff's request making the deadline to file for entry of final default judgment June 21, 2022.

As of the filing of this Motion, Defendants have not served any paper on the undersigned or filed any paper required by law in response to the Complaint. Accordingly, Plaintiff now requests entry of a Final Default Judgment in her favor against Defendants.

## II.
## DEFAULT JUDGMENT STANDARD

In the Fifth Circuit, there are three steps to obtaining a default judgment: (1) default; (2) entry of default; and (3) default judgment. *New York Life Ins. Co v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996);

*see also* Fed. R. Civ. P. 55(a). A default occurs when "defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *Id.*; *see also* Fed. R. Civ. P. 55(a). The clerk of court will enter a default when established by an affidavit or otherwise, and at that time a plaintiff may apply for a judgment based on the default. Fed. R. Civ. P. 55(a).

Where the procedural requirements are met, courts then consider six factors in determining whether default judgment is appropriate, including: (1) whether material facts are in dispute; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

Once the Court determines that default is appropriate, it must consider whether a plaintiff's allegations state a claim so as to "provide a sufficient basis to support the entry of default judgment." *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A defendant who has defaulted is deemed to have admitted the facts plead in plaintiff's complaint. *Id.* A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, the factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, a complaint that sufficiently states facts giving rise to a cause of action is sufficient to grant judgment on the facts.

### III.
### ARGUMENT & AUTHORITIES

The procedural requirements for default judgment have been met in this case. Defendants were properly served with the Complaint on March 31, 2022 via personal service, Defendants failed to answer or otherwise respond to the Complaint within the timeframe required by the Federal Rules

of Civil Procedure. As a result, the Clerk of Court entered a default against the Defendants on June 6, 2022. *See* ECF No. 11.

The Fifth Circuit's six factor assessment weighs in favor of the Court entering default judgment. First, no material issues of fact exist because, by failing to answer or otherwise respond to the Complaint, Defendants have admitted to the well-pleaded allegations in Plaintiff's Complaint, except regarding damages. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Defendants had ample opportunity to contest Plaintiff's factual allegations by responding to this lawsuit and failed to do so. Further, the Clerk entered default of against Defendants on June 6, 2021. *See* ECF No. 11. Thus, Defendants are deemed to have admitted Plaintiff's well-pleaded allegations of fact in Plaintiff's Complaint (ECF No. 1) and no material facts are in dispute.

Second, there has been substantial prejudice to Plaintiff. Default judgment is particularly appropriate when a "[d]efendant's failure to respond threatens to bring the adversary process to a halt, effectively prejudicing plaintiff's interest." *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *3 (S.D. Tex. Oct. 5, 2011) (citing *Sun Bank*, 874 F.2d at 276). Because Defendants have been nonresponsive, and because Plaintiff has expended substantial effort in pursuing her unpaid wages, Plaintiff's interests will be substantially prejudiced if default judgment is denied.

Third, Plaintiff has established grounds for default. Defendants were served with the Complaint, and upon Defendants' failure to answer or otherwise respond, the Clerk of Court entered default.

Fourth, there is no evidence before the Court that a "good faith mistake or excusable neglect" caused the Defendants' default. Also, Defendants have failed to participate in this matter since being served with the Complaint which weights in favor of default judgment.

Fifth, default judgment is not harsh under the circumstances because Plaintiff only seek "the relief to which [she is] entitled under the FLSA" and her employment agreement. *See Holladay v. OTA Training, LLC,* No. 3:14-CV-0519-B, 2015 WL 5916440, at *2 (N.D. Tex. Oct. 8, 2015). Under §§ 207 of the FLSA, an employer must pay its employees overtime compensation at a rate of one-and-one-half times the employee's regular rate for all work in excess of forty hours over the course of a workweek. 29 U.S.C. § 207(a)(1). Throughout the period of Plaintiff's employment, Defendants failed to compensate her for all hours worked and improperly withheld overtime pay. *See* ECF No. 1, ¶¶ 1, 3-6, 11-12, 14, 18, 37-57, 66-84; Ex. A, ¶¶ 10-11, 18. Thus, Plaintiff is entitled to relief under the FLSA, and entry of default judgment against Defendants would not be harsh under the circumstances.

Sixth, there are no facts in the record which would demonstrate "good cause" for setting aside the default judgment if challenged by Defendants. *Lindsey*, 161 F.3d at 893.

Given that Defendants are in default, Plaintiff now moves for the entry of Final Default Judgment. When ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment. *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (recognizing that judgment by default may be entered without a hearing where the amount claimed is "a liquidated sum or one capable of mathematical calculation"). As a general rule, courts may enter a default judgment awarding damages without a hearing if the amount of damages is a liquidated sum, an amount capable of mathematical calculation, or an amount demonstrated by detailed affidavits. *Deutsh v. Superior 1 Properties, LLC*, No. 1-15-CV-742-RP, 2015 WL 6845319, at *3 (W.D. Tex. Nov. 6, 2015) citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir.1993).

Plaintiff is seeking the entry of Final Default Judgment because the damages sought by Plaintiff are damages for past unpaid wages, including overtime wages, and unpaid commissions/truck

allowances. The unpaid wages, including overtime wages, and unpaid commissions/truck allowances are for an amount that is a "sum certain."

## IV.
## DAMAGES

Attached hereto as Exhibit "A" is the declaration of Plaintiff in support of her request for the entry of Final Default Judgment. Plaintiff's declaration reflects the total damages claimed by her for unpaid wages, overtime wages, liquidated damages, post judgment interest, attorneys' fees, and costs as provided by the FLSA, and for unpaid wages, commissions, and truck allowances as provided by her employment agreement with Defendants total $86,286.21. Ex. A, ¶ 26; Ex. B, ¶ 14. Plaintiff's Declaration and the allegations in the Complaint are sufficient to support the entry of Final Judgment. *See Freilich v. Green Energy Res., Inc.*, 297 F.R.D. 277, 280 (W.D. Tex. 2014) ("After a default judgment is entered, all well-pleaded factual allegations in the plaintiff's complaint are taken as true.").

**A.     FLSA Damages**

Plaintiff is claiming all available relief, including compensation, liquidated damages, post judgment interest, attorneys' fees, and costs, pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b). Plaintiff's claims for compensation include unpaid wages and unpaid overtime wages. Plaintiff is entitled to liquidated damages in an amount equal to the unpaid wages as a matter of law. 29 U.S.C. § 216(b). Plaintiff worked long hours and has not been paid overtime compensation at the rate required by the FLSA for hours worked over forty (40) in a workweek.

   *1.     Unpaid Overtime Wages*

The FLSA obligates an employer to compensate its employees at one-and-one-half times their regular rate for any workweek in which the employees work more than forty hours. 29 U.S.C. § 207(a)(1). Plaintiff has established that Defendants violated the overtime provisions of the FLSA with respect to Plaintiff, and she is entitled to damages for all unpaid overtime compensation. *See generally,*

ECF No. 1; Ex. A. Specifically, Defendants did not pay Plaintiff at a rate of one and one-half times her regular rate for all hours worked over forty (40) hours per week. Because Defendants violated the overtime provisions of the FLSA, Plaintiff is entitled to damages for all unpaid overtime compensation.

Plaintiff worked for Defendants from March 02, 2021 to August 21, 2021. *See* ECF No. 1, ¶ 34; Ex. A, ¶ 2. Plaintiff was scheduled to (and did) work long hours and routinely worked in excess of forty (40) hours each workweek. *See* ECF No. 1, ¶¶ 3-4, 14, 37-43, 55-57, 77, 83-84; Ex. A, ¶ 10. Based on the schedule set by Defendants, Plaintiff worked Monday through Friday (and occasional weekends) from 6:30 am to 7:00 pm with no breaks. *See* ECF No. 1, ¶¶ 37-43; Ex. A, ¶¶ 8-9. In addition to her scheduled hours, Defendants would require Plaintiff to continue working into the evenings and weekends. *Id.* On average, Plaintiff typically worked sixty (60) hours per workweek. *See id.* at ¶¶ 37-38; Ex. A, ¶ 10. Plaintiff was paid a salary but was not paid overtime compensation at the proper rate for all hours worked in excess of forty (40) hours per workweek during the entirety of her employment. Ex. A, ¶¶ 5-11.

Plaintiff's declaration details the hours worked for Defendants, the work schedule set by Defendants, and the illegal pay practices imposed by Defendants. *See* Ex. A. As shown therein, Plaintiff's unpaid overtime wages total $10,015.00. *See* Ex. A, ¶¶ 7, 25.

    2.    ***Liquidated Damages***

Under the FLSA a district court generally must award a prevailing plaintiff liquidated damages that are equal in amount to the plaintiff's actual damages. *Owens v. Marstek, LLC*, 548 F. App'x 966, 972 (5th Cir. 2013); *Bernard v. IBP, Inc. of Neb.*, 154 F.3d 259, 267 (5th Cir. 1998); 29 U.S.C § 216(b). Pursuant to 29 U.S.C. § 260, a Court may decline to award liquidated damages, but only if an employer shows to the satisfaction of the Court that the failure to pay a plaintiff overtime wages was done in both good faith and that the employer had a reasonable basis for believing that his failure to pay

overtime wages was not in violation of the FLSA. *Lee v. Coahoma County, Miss.*, 937 F.2d 220, 226–27 (5th Cir. 1991); *Black v. SettlePou, P.C.*, 732 F.3d 492, 501 (5th Cir. 2013) (quoting *Singer v. City of Waco, Tex.*, 324 F.3d 813, 822 (5th Cir. 2003)). An employer who seeks to avoid liquidated damages as a result of violating the provisions of the FLSA bears the burden of proving that its violation was both in good faith and predicated upon reasonable grounds. *See Nero v. Industrial Molding Corp.*, 167 F.3d 921, 921 (5th Cir. 1999) ("Under the FLSA, a district court may not exercise its discretionary authority to reduce or to eliminate a liquidated damages award unless the employer first sustains its burden of showing that its failure to obey the statute was in good faith."). To satisfy the good faith requirement, an employer must show that it acted with both objective and subjective good faith. *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *Trinity Carton Co. v. Falstaff Brewing Corp.*, 767 F.2d 184, 194 (5th Cir. 1985).

In this case, Plaintiff has alleged that Defendants' violations of the FLSA were neither reasonable nor in good faith and there is nothing in the record to contradict these assertions. *See* ECF No. 1, ¶¶ 83-84. As Defendants are in default and have failed to answer or otherwise respond to the Complaint, the Defendants cannot carry their burden to prove that their violation of the FLSA was both in good faith and reasonable that would make it unfair to impose liquidated damages upon them. Furthermore, by failing to respond to Plaintiff's Complaint, Defendants have admitted all facts pleaded in Plaintiff's complaint, including that the overtime wage violations were willful. *Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.").

Therefore, Plaintiff is owed liquidated damages in addition to the overtime wages owed. Specifically, Plaintiff is owed $10,015.00 in liquidated damages. *See* Ex. A at ¶ 25. Plaintiff's total

damages for overtime violations, including both actual and liquidated damages, should be set in the final judgment in the amount of $20,030.00. *Id.*

### 3. *Post-Judgment Interest*

Interest "shall be allowed on any money judgment in a civil case recovered in district court." 28 U.S.C. § 1961(a). Such an award is mandatory under 28 U.S.C. § 1961 and should be awarded by the district court "as a matter of course." *Eisenhour v. Stafford*, No. 9:12-CV-62, 2013 WL 6212725 (E.D. Tex. Nov. 26, 2013). Furthermore, damages awarded under the FLSA are permitted post-judgment interest. *Reeves v. Int'l Tel. & Tel. Corp.*, 705 F.2d 750, 751-52 (5th Cir. 1983).

As a result, the Court should grant Plaintiff's request that post-judgment interest be included in the judgment entered under this Order.

### B. Unpaid Straight Time Wages Damages

Pursuant to Plaintiff's employment agreement with Defendants, she is entitled to yearly compensation of $125,000—amounting to $2,403.85 per week. *See* Ex. A at ¶ 5. Defendants paid Plaintiff bi-weekly. *Id.* Defendants failed to pay Plaintiff any compensation for the last two (2) weeks and two (2) days of her employment with Defendants, which is compensable time under the FLSA and pursuant to her contact with Defendants. *See* Ex. A at ¶ 19. Indeed, Plaintiff worked for Defendants during this two (2) weeks and two (2) days period, but Plaintiff has not been paid at all for the last two (2) weeks and two (2) days of her employment with Defendants. *See id.* Therefore, in addition for unpaid overtimes for this period, Plaintiff is owed $5,769.23. *See id.*

### C. Contractual Damages

Plaintiff is claiming all available relief, including unpaid wages, commissions, and truck allowances pursuant to her employment agreement with Defendants. *See* ECF No. 1, Ex. A. Plaintiff is owed unpaid commissions and truck allowances that are rightfully due and payable to her under the terms of the employment agreement between Plaintiff and Defendants. *See* Ex. A at ¶¶ 20-24.

Defendants were to compensate Plaintiff Champion with a vehicle allowance, either by way of a company-supplied truck or a $1,200.00 per month payment for fuel and maintenance. *See* ECF No. 1, Ex. A. at ¶ 22. However, Plaintiff Champion did not (and has not, to date) receive compensation for her vehicle allowance for the first two (2) months of her employment with Defendants. *See* Ex. A at ¶ 22. After the first two (2) months of her employment, Plaintiff received a company-supplied truck. *See* Ex. A at ¶ 22-23. Therefore, Plaintiff is entitled to $2,400.00 in unpaid vehicle allowance. *See id.*

Lastly, Defendants were to pay Plaintiff Champion a 3% first-year sales commission for the "CPS Gas and Electric Engineering Contract" and a 2% first-year commission for "eligible new accounts." *See* ECF No. 1, Ex. A. To date, Plaintiff has not been compensated by Defendants for any of the commissions she earned. Therefore, Plaintiff is entitled unpaid commission wages totaling $30,000.00.

Based on the foregoing and as shown by Plaintiff's Declaration, Plaintiff is owed $58,199.23 consisting of $10,015.00 in unpaid overtime wages ,$10,015.00 in liquidated damages, $5,769.23 in unpaid straight time wages, $2,400.00 in unpaid vehicle allowances, and $30,000.00 in unpaid commissions. *See* Ex. A at ¶¶ 19-26. Plaintiff's Declaration is the best evidence of her hours worked as Defendants failed to participate in this case. *See* Ex. A.

## V.
## ATTORNEYS' FEES AND COSTS

As Plaintiff filed suit for violations of the FLSA, Plaintiff is entitled to recover her reasonable attorney's fees and costs under the FLSA. *See* 29 U.S.C. § 216(b). Specifically, 29 U.S.C. § 216(b) authorizes an award of attorneys' fees and costs to the prevailing plaintiffs in any proceedings to enforce the provisions of the FLSA.

Under the FLSA, the award of attorney's fees is mandatory, and courts have long recognized that to achieve the remedial goal of the FLSA attorney's fees must be awarded. *Steele v. Leasing Enterprises, Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016). Awarding employees their attorney's fees is

necessary to "provide an adequate economic incentive for private attorneys" to take FLSA cases and "thereby to ensure competent legal representation for legitimate claims." *Odil v. Evans*, No. 3:01-cv-00070, WL 3591962 at *3 (M.D. Ga. Dec. 30, 2005).

In *Hensley v. Eckerhart*, the Supreme Court stated that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable rate." This amount, which is commonly referred to as the lodestar, is then adjusted to reflect the "results obtained." 461 U.S. 424, 433 (1983); *accord Saizan v. Delta Concrete Prod. Co., Inc.*, 448 F.3d 795, 799 (5th Cir. 2006). To determine the amount of attorney's fees to be awarded, the Fifth Circuit utilizes a two-step process to derive the lodestar. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 323–24 (5th Cir. 1995). Under this method, a court first determines the reasonable number of hours expended on the litigation and the reasonable hourly rates for the participating attorneys. *See id.* at 324. Then, the court must determine a lodestar by multiplying the reasonable hours by the reasonable hourly rates. *See id.* (citing *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).

There is a strong presumption of the reasonableness of the lodestar amount. *See Saizan*, 448 F.3d at 800. However, after calculating the lodestar, the court may adjust the lodestar amount upward or downward based upon its analysis of twelve factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *Id.* The twelve factors enumerated in *Johnson* are as follows:

(1) The time and labor required to represent the client or clients;

(2) The novelty and difficulty of the issues in the case;

(3) The skill required to perform the legal services properly;

(4) The preclusion of other employment by the attorney;

(5) The *customary fee charged for those services in the relevant community;*

(6) Whether the fee is fixed or contingent;

(7) The time limitations imposed by the client or circumstances;

(8) The *amount involved and the results obtained;*

(9) The *experience, reputation, and ability of the attorney;*

(10) The undesirability of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

*Johnson,* 488 F.2d at 717–19 (emphasis added).

Fee applicants bear the burden of establishing the appropriate hours and hourly rates and proving they exercised billing judgment. *See id.; see also Walker v. City of Mesquite, Tex.*, 313 F.3d 246, 251 (5th Cir. 2002); *Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996). A fee applicant can only meet their burden by presenting evidence that is adequate for a court to determine what hours should be included in the reimbursement. *See Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990). Thus, courts generally require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for non-compensable hours. *See id.*

1. **Hours Claimed**

A court's first step in determining reasonable attorney's fees is to determine whether the hours claimed were reasonably expended on the litigation. *See id.* Courts should examine both whether the total number of hours claimed is reasonable and whether specific hours claimed were reasonably expended. *League of United Latin Am. Citizens # 4552 v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1232 (5th Cir. 1997). If the hours are not reasonably expended, they should be excluded from the initial fee calculation. *See Kellstrom*, 50 F.3d at 324. The Declaration of Clif Alexander contains a

certification that the hours claimed are well grounded and in fact justified. *See* Declaration of Clif Alexander, attached hereto as Exhibit B. Sworn testimony by counsel that the hours were spent litigating this case is evidence of considerable weight of the time required and it must appear that the time is obviously and convincingly excessive to reduce the hours. *See Perkins v. Mobile Housing Authority*, 847 F.2d 738 (11th Cir. 1988).

### 2. Hourly Rate

Once the court determines whether the hours are reasonable, it must determine the market rate. The market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question. *Uphoff v. Elegant Bath, Ltd.*, 176 F3d 399 (7th Cir. 1999). The burden of proving the market rate is on the party seeking the fee award, but once the prevailing party's attorney provides evidence of establishing his market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded. *Id.* By his declaration, attorney Clif Alexander has demonstrated that he is familiar with the rates charged by attorneys with similar experience in the Western District of Texas. *See* Ex. B. Attorney Clif Alexander has practiced exclusively in the area of employment law for fourteen (14) years.

Importantly, Defendants failed to present any evidence that the rates requested are not reasonable rates for an attorney in the Western District of Texas with the experience and qualifications of Plaintiff's counsel. Plaintiff has met her burden of showing that a reasonable hourly rate for her attorney is $650.00 in this matter.

Finally, as stated in the Declaration of Clif Alexander, Plaintiff has incurred costs of $941.98 in filing fees, service of process, postage, and research fees. *See* Ex. B. Plaintiff is entitled to reimbursement of her costs permitted under 28 U.S.C. §1920. *See* 29 U.S.C. § 216.

WHEREFORE, Plaintiff requests the entry of a Final Default Judgment in her favor and against Defendants in the principal amount of $58,199.23 plus $27,145.00 in attorneys' fees and $941.98 in costs for a total of $86,286.21.

Date:   June 21, 2022                    Respectfully submitted,

                                **ANDERSON ALEXANDER, PLLC**

                          By:      /s/ *Clif Alexander*
                                **Clif Alexander**
                                State Bar No. 24064805
                                clif@a2xlaw.com
                                **Austin W. Anderson**
                                State Bar No. 24045189
                                austin@a2xlaw.com
                                **Lauren E. Braddy**
                                State Bar No. 24071993
                                lauren@a2xlaw.com
                                **Carter T. Hastings**
                                State Bar No. 24101879
                                carter@a2xlaw.com
                                819 N. Upper Broadway
                                Corpus Christi, Texas 78401
                                Telephone: (361) 452-1279
                                Facsimile: (361) 452-1284

                                *Attorneys in Charge for Plaintiff and the Putative Class Members*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, W District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means. A true and accurate copy of the foregoing was mailed to the following by Certified US Mail:

**CM/RRR**
**AND FIRST-CLASS MAIL**
PhaseLink Utility Solutions, LLC c/o Daryl Bennet
1000 Drayton
Schertz, Texas 78154

**CM/RRR**
**AND FIRST-CLASS MAIL**
Daryl Bennet
1000 Drayton
Schertz, Texas 78154

/s/ Clif Alexander
Clif Alexander